UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549,

Plaintiff,

v.

LANGLEY PARTNERS, L.P., NORTH OLMSTED
PARTNERS, L.P., QUANTICO PARTNERS, L.P.,
AND JEFFREY THORP
c/o Andrew G. Gordon, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064,

Defendants.

C.A. No. _____ (___)

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF ALLEGATIONS

1.     Defendant hedge funds Langley Partners, L.P., North Olmsted Partners, L.P. and

Quantico Partners, L.P. (collectively, "Langley Partners"), and their portfolio manager, defendant

Jeffrey Thorp ("Thorp"), perpetrated an illegal trading scheme to evade the registration requirements

of the federal securities laws in connection with twenty-three unregistered securities offerings, which

are commonly referred to as "PIPEs" (Private Investment in Public Equity). From 2000 to 2002,

defendants realized more than $7,000,000 in ill-gotten gains as a result of the unlawful trading

scheme, which violated the antifraud and registration provisions of the federal securities laws.

2.    Typically, after agreeing to invest in a PIPE transaction, Thorp sold short the issuer's stock, frequently through "naked" short sales in Canada. Later, once the Commission declared the resale registration statement effective, Thorp used the PIPE shares to close out the short positions — a practice Thorp knew was prohibited by the registration provisions of the federal securities laws. To avoid detection and regulatory scrutiny, Thorp employed a variety of deceptive trading techniques, including wash sales and matched orders, to make it appear that he was covering his short sales with legal, open market stock purchase when in fact the covering transactions were not open market transactions because Thorp was on both sides of the trades.

3.    Langley Partners' unlawful PIPE investment strategy and deceptive trading scheme involved twenty-three issuers that sought PIPE financing (collectively, "the PIPE Issuers"). During the relevant period, the common stock of each PIPE Issuer was registered with the Commission pursuant to either Section 12(b) or Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and traded on either the NASDAQ National Market, the New York Stock Exchange, or the Over-The-Counter Bulletin Board.

4.    In each of the transactions, Thorp also made materially false representations to the PIPE Issuers to induce them to sell securities to Langley Partners. As a precondition of participation in a PIPE, Langley Partners had to represent that it would not sell, transfer or dispose of the PIPE shares other than in compliance of the registration provisions of the Securities Act of 1933 ("Securities Act"). This representation was material to the PIPE Issuers, who, as the stock purchase agreements made clear, relied on the investors' representations in order to qualify for an exemption from the registration requirements for their private offering. At the time Thorp signed the securities purchase agreements, however, he intended, if he had not already done so, to distribute the restricted

2

PIPE securities in violation of the registration provisions of the Securities Act.

5.      On seven occasions, Thorp also engaged in insider trading by selling the securities of PIPE Issuers on the basis of material nonpublic information.  Thorp engaged in this conduct notwithstanding his express agreement to keep information about the PIPE confidential and/or to refrain from trading prior to the public announcement of the PIPE.

6.      By engaging in the acts alleged herein, the defendants engaged in, and unless permanently restrained and enjoined by the Court will continue to engage in, transactions, acts, practices and courses of business that violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 5 of the Securities Act [15 U.S.C. § 77e].

7.      The Commission seeks a judgment from the Court:  (a) enjoining the defendants from engaging in future violations of the above sections of the federal securities laws; (b) ordering defendants Langley Partners, L.P., North Olmsted Partners, L.P. and Quantico Partners, L.P., jointly and severally, to disgorge, with prejudgment interest, the illegal profits and proceeds they obtained as a result of the actions described herein; and (c) ordering defendants Langley Partners, L.P., North Olmsted Partners, L.P., Quantico Partners, L.P. and Thorp to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78(u)(d)].

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)] and Sections 21(d), 21(e) and 27 of the

Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa].

9.      The defendants made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, practices, and courses of business alleged herein.  Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

## DEFENDANTS

10.     **Jeffrey Thorp**, age 42, is a resident of New York, New York.

11.     **Langley Partners, L.P.**, a Delaware limited partnership, is a hedge fund with its principal place of business at 535 Madison Avenue, New York, New York.  Langley Capital, LLC ("Langley Capital") is the general partner of Langley Partners, and Thorp is the managing member of Langley Capital.  During the relevant period, Thorp was the portfolio manager of, and only authorized trader for, Langley Partners.

12.     **North Olmsted Partners, L.P.**, a California limited partnership, is a hedge fund with its principal place of business at 535 Madison Avenue, New York, New York.  During the relevant period, Thorp was the portfolio manager of, and only authorized trader for, North Olmsted Partners.

13.     **Quantico Partners, L.P.**, a Delaware limited partnership, was a hedge fund with its principal place of business at 535 Madison Avenue, New York, New York.  Langley Capital was the general partner of Quantico Partners.  During the relevant period, Thorp was the portfolio manager of, and only authorized trader for, Quantico Partners.  Quantico Partners has been merged into Langley Partners.

4

## STATEMENT OF FACTS

### PIPEs Background

14.    Issuers utilize the PIPEs market when more traditional means of financing, such as a registered repeat offering, are for various reasons impractical.  PIPE securities are generally issued pursuant to Section 4(2) of the Securities Act or Regulation D under the Securities Act, which provide an exemption from registration for a non-public offering by an issuer.  Because PIPEs are unregistered offerings, PIPE investors receive restricted securities when a transaction closes.  Before investors can trade those restricted securities, the issuer must file, and the Commission must declare effective, a resale registration statement, a process that may take 60 to 120 days to complete.  PIPE investors therefore must wait a certain period of time before they can freely trade the securities that they received in the PIPE.  The sale of the securities to the PIPE investor is typically conditioned upon effectiveness of the resale registration statement.  To compensate investors for this temporary illiquidity, PIPE issuers customarily offer the restricted securities at a discount to market price.

15.    Many PIPE investors "hedge" their investment by selling short the PIPE issuer's securities before the resale registration statement is declared effective.  The size of the "hedge" is limited by the investor's ability to locate shares of the PIPE issuer's securities to borrow in order to sell short.  A PIPE investor that wishes to fully "hedge" its investment therefore typically wants to purchase in the offering only as many shares as it knows it can locate to borrow.  In thinly-traded securities (such as many of those at issue in this case), where locating shares can be difficult, investors wishing to "hedge" must limit their investment, which correspondingly limits their ability to profit from the PIPE transaction.

16.    Thorp violated Section 5 by covering his pre-effective date short positions with the

5

actual shares received in the PIPE. This is because shares used to cover a short sale are deemed to have been sold when the short sale was made.

17.    Thorp knew the lawful way to "hedge" PIPE investments, but chose instead to close out his pre-effective date short positions with PIPE shares. This unlawful trading scheme permitted him to profit from outsized allocations of PIPE offerings without incurring corresponding market risk.

### The Unlawful Trading Scheme

18.    During the period 2000 through 2002, Thorp implemented the unlawful trading scheme that enabled Langley Partners to invest in PIPE offerings without incurring market risk. His strategy was simple: to short sell Langley Partners' entire restricted PIPE allocation as quickly as possible before the Commission declared the resale registration statement effective and then to close out those short positions using the PIPE shares.

19.    In each of the twenty-three transactions listed below (except TiVo, Inc. ("TiVo")), in which Thorp and Langley Partners engaged only in illegal insider trading), Thorp and Langley Partners employed an unlawful trading strategy in violation of the antifraud and registration provisions of the federal securities laws:

| | PIPE Issuer | PIPE Closing Date |
|---|---|---|
| 1 | Irvine Sensors | 08/14/00 |
| 2 | Amtech | 09/13/00 |
| 3 | NaPro | 11/16/00 |
| 4 | EcTel | 03/25/01 |
| 5 | PhotoMedex | 03/27/01 |
| 6 | BriteSmile | 04/30/01 |
| 7 | Guilford | 06/08/01 |
| 8 | Generex | 07/30/01 |
| 9 | HealthExtras | 09/25/01 |
| 10 | Visionics | 10/05/01 |
| 11 | SIGA | 10/12/01 |
| 12 | MGI Pharma | 10/31/01 |
| 13 | Alloy | 11/01/01 |
| 14 | Gentner | 11/15/01 |
| 15 | InteliData | 11/28/01 |
| 16 | Viisage | 12/14/01 |
| 17 | Rail America | 12/18/01 |
| 18 | Impco | 01/11/02 |
| 19 | PurchasePro.com | 02/13/02 |
| 20 | Matritech | 03/04/02 |
| 21 | AVI BioPharma | 03/25/02 |
| 22 | Cell Pathways | 03/26/02 |
| 23 | TiVo (insider trading only) | 08/28/01 |

20.    Although the manner of establishing and covering the short positions differed from deal to deal, the MGI Pharma, Inc. ("MGI Pharma") PIPE offering that closed on October 31, 2001 illustrates defendants' basic trading strategy:  Langley Partners invested $1,100,000 in the offering, receiving 100,000 restricted MGI Pharma shares at $11 per share – a discount of approximately 15% from MGI Pharma's then-market price of approximately $13 per share.  Langley Partners quickly short sold all 100,000 of its restricted shares (50,000 at $13.15 and 50,000 at $13.56), garnering

proceeds of $1,335,500. Thus, Langley Partners had purchased 100,000 shares in the PIPE and shorted 100,000 shares before the resale registration statement was effective. Once the Commission declared the resale registration statement effective, Langley Partners, through the deceptive and nearly undetectable methods described below, used its freely tradable PIPE shares to close out its 100,000 share short position. Langley Partners' profit was therefore locked in at the moment its short sales were executed: the $1,335,500 short sale proceeds minus the $1,100,000 investment, for a net profit of $235,500.

21.    Langley Partners engaged in the same illegal trading scheme in connection with each of the PIPE offerings (except for TiVo), garnering a total of approximately $7,000,000 in ill-gotten gains.

22.    Langley Partners employed several different methods — often used in combination for the same PIPE — to establish its short positions. Because Langley Partners wanted to complete its short selling as quickly, and as cheaply, as possible, it often executed its pre-effective date short sales through a Canadian broker-dealer.

23.    Using its Canadian broker-dealer, Langley Partners executed "naked" short sales by, among other things, selling short without either owning unrestricted shares or borrowing unrestricted shares to deliver. "Naked" short selling was permissible in Canada during the relevant period, so Langley Partners attempted to establish its short positions in Canada because it did not own unrestricted shares and did not want to incur the cost of borrowing unrestricted shares of the PIPE Issuers' securities. Because Langley Partners therefore had no borrowing limitations, and because it knew that it would be using its PIPE shares illegally to close out its pre-effective date short positions, Langley Partners was able to make larger PIPE investments than other investors and, as a result, was

8

able to earn larger profits. In addition to its "naked" Canadian short selling, Langley Partners also engaged in short selling in the United States through domestic broker-dealers or by executing short sale orders itself through electronic communications networks.

24.    Once Langley Partners had established its short position, it waited until the Commission declared effective the resale registration statement and then began to use its PIPE shares to cover (or "unwind") the short positions in violation of Section 5 of the Securities Act.

25.    To close out Canadian short positions, Langley Partners either directly transferred its PIPE shares to its Canadian account or engaged in deceptive, pre-arranged matched orders with its Canadian broker-dealer. To execute the matched orders, Thorp would call or instant message his Canadian broker to inform him that Langley Partners intended to sell a certain number of its PIPE shares from its domestic prime brokerage account at a particular time and price using a particular exchange, and would instruct the broker to enter a buy order for Langley Partners' Canadian account for the same number of shares at the same time and price and on the same exchange. The buy and sell orders would meet on the specified exchange, and the Canadian broker-dealer would use the PIPE shares that he had just purchased from Langley Partners' domestic account to close out Langley Partners' Canadian short positions.

26.    When Thorp established his short positions in his domestic prime brokerage account, he used two unlawful trading methods to close out those short positions: "closing the box" and wash sales. To "close the box," Langley Partners simply journaled its PIPE shares from its cash account to its short account with instructions for its prime broker to close out the short position using the PIPE shares.

27.    In other instances, Thorp asked broker-dealers to register as market makers in

particular PIPE securities to assist Langley Partners in washing its PIPE shares. With the help of these broker-dealers, Langley Partners sold its PIPE shares to the brokers, which then sold the exact same shares back to Langley Partners. Once Langley Partners had received its PIPE shares back from the broker-dealers, Langley Partners used those PIPE shares to close out its domestic short positions.

28.    As a necessary part of the unlawful trading scheme, Thorp intentionally made materially false representations to the PIPE Issuers to induce them to sell their securities to Langley Partners. Each securities purchase agreement between the PIPE Issuers and Langley Partners contained a provision in which Langley Partners represented that it was purchasing the PIPE securities in compliance with Section 5 of the Securities Act. In each offering, Langley Partners represented, among other things, that it was purchasing the securities for its own account and without any present intention of distributing the securities.

29.    Thorp signed these securities purchase agreements despite knowing that Langley Partners (i) was not purchasing the PIPE securities for its own account, and (ii) had a present intention to distribute the PIPE securities through its short selling and to cover with the PIPE shares in violation of Section 5. In a number of instances, not only did Langley Partners have a present intention to distribute the PIPE shares at the time it signed the securities purchase agreements, it had in fact already distributed the shares through short sales that it intended to cover, and did in fact cover, with its PIPE shares.

### Insider Trading

30.     Thorp also engaged in insider trading in connection with seven PIPE offerings (Gentner Communications, Inc.; Irvine Sensors Corporation; Matritech, Inc.; MGI Pharma, Inc.; PhotoMedex, Inc.; TiVo, Inc.; and Visionics Corporation) by selling short the PIPE Issuers' securities prior to the public announcement of the offering.  Advance news of a PIPE offering can be valuable and material nonpublic information since the announcement typically precipitates a decline in the price of a PIPE issuer's securities as the market absorbs the dilutive effect of the offering.  In connection with each of the seven deals, Langley Partners received offering documents from PIPE Issuers with language requiring it to maintain the information contained therein in confidence and/or to refrain from trading on that information prior to the public announcement of the offering.

31.     Notwithstanding these agreements to the contrary, Langley Partners breached its duty to maintain the information about the PIPEs in confidence, misappropriated the confidential information concerning these seven offerings and traded on the basis of that material nonpublic information by selling short the PIPE Issuers' securities prior to the public announcement.

### FIRST CLAIM FOR RELIEF

### INSIDER TRADING AND FRAUD
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

32.     The Commission realleges and reincorporates paragraphs 1 through 31 as if fully set forth herein.

33.     From at least 2000 to 2002, the defendants, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities:  (a)

employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omissions to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit.

34.    By reason of their actions alleged herein, the defendants each violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### INSIDER TRADING
### Violations of Section 17(a) of the Securities Act

35.    The Commission realleges and reincorporates paragraphs 1 through 34 as if fully set forth herein.

36.    From at least 2000 to 2002, the defendants, by use of the means or instrumentalities of interstate commerce or of the mails, in the offer or sale of securities: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of the securities offered and sold by the defendants.

37.    By reason of their actions alleged herein, the defendants violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF

**REGISTRATION AND PROSPECTUS DELIVERY**
**Violations of Section 5 of the Securities Act**

38.     The Commission realleges and reincorporates paragraphs 1 through 37 as if fully set forth herein.

39.     Defendant, directly or indirectly:  (a) without a registration statement in effect as to the securities, (i) made use of the means or instruments of transportation or communication or the mails to sell such securities through the use or medium of a prospectus or otherwise, or (ii) carried or caused to be carried through the mails, or in interstate commerce, by any means or instruments of transportation, such securities for the purpose of sale or for delivery after sale; (b) carried or caused to be carried through the mails or in interstate commerce securities for the purpose of sale or for delivery after sale without being accompanied or preceded by a prospectus; and (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise securities for which a registration statement had not been filed as to such securities.

40.     By reason of their actions alleged herein, the defendants violated Section 5 of the Securities Act [15 U.S.C. § 77e].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

### **I.**

Finding that the defendants each violated the securities laws and Rule promulgated thereunder as alleged herein;

### **II.**

Enjoining permanently defendants Langley Partners, L.P., North Olmsted Partners, L.P., Quantico Partners, L.P. and Jeffrey Thorp from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e and 77q(a)];

### **III.**

Ordering defendants Langley Partners, L.P., North Olmsted Partners, L.P. and Quantico Partners, L.P. jointly and severally to disgorge the profits and proceeds they obtained as a result of their actions alleged herein and to pay prejudgment interest thereon;

### **IV.**

Ordering defendants Langley Partners, L.P., North Olmsted Partners, L.P. and Quantico Partners, L.P. and Jeffrey Thorp to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78(u)(d)]; and

## V.

Granting such other relief as this Court may deem just and proper.

Dated: March 14, 2006

Respectfully submitted,

Scott W. Friestad
Robert B. Kaplan
Daniel T. Chaudoin (Bar No. 458659)
Anthony S. Kelly
Julie M. Riewe (Bar No. 472470)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4952 (Chaudoin)
(202) 772-9231 (fax) (Chaudoin)
chaudoind@sec.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

LANGLEY PARTNERS, L.P., NORTH OLMSTED
PARTNERS, L.P., QUANTICO PARTNERS, L.P.,
AND JEFFREY THORP,

Defendants.

C.A. No. __-___ (__)

## CONSENT OF DEFENDANTS LANGLEY PARTNERS, L.P., NORTH OLMSTED PARTNERS, L.P., AND QUANTICO PARTNERS, L.P.

1.    Defendants Langley Partners, L.P., North Olmsted Partners, L.P., and Quantico Partners, L.P. ("Defendants"), and each of them, waive service of a summons and the complaint in this action, enter a general appearance, and admit the Court's jurisdiction over Defendants, and each of them, and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendants, and each of them, admit), Defendants, and each of them, hereby consent to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendants, and each of them, from violation of Sections 5 and 17(a) of the Securities Act of 1933 ("Securities

1

Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder;

(b)    orders Defendants jointly and severally to pay disgorgement in the amount of $7,048,528, plus prejudgment interest thereon in the amount of $1,769,400; and

(c)    orders Defendants jointly and severally to pay a civil penalty in the amount of $4,700,000 under Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

3.    Defendants, and each of them, agree that they shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendants, or any of them, pay pursuant to the Final Judgment, regardless whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of third parties. Defendants, and each of them, further agree that they shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendants, or any of them, pay pursuant to the Final Judgment, regardless whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of third parties.

4.    Defendants, and each of them, waive the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.    Defendants, and each of them, waive the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

2

6.      Defendants, and each of them, enter into this Consent voluntarily and represent that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendants, or any of them, to enter into this Consent.

7.      Defendants, and each of them, agree that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.      Defendants, and each of them, will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waive any objection based thereon.

9.      Defendants, and each of them, waive service of the Final Judgment and agree that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendants, and each of them, of its terms and conditions. Defendants, and each of them, further agree to provide counsel for the Commission, within thirty (30) days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendants, and each of them, have received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendants, and each of them, in this civil proceeding. Defendants, and each of them, acknowledge that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendants, and each of them, waive any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendants, and each of them, further acknowledge that the

3

Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendants, and each of them, understand that they shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendants, and each of them, understand and agree to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendants, and each of them, agree: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendants, and each of them, hereby withdraw any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendants, or any of them, breach this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendants', and each of their: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

4

12.     Defendants, and each of them, hereby waive any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendants, or any of them, to defend against this action. For these purposes, Defendants, and each of them, agree that neither Defendants, nor any of them, are the prevailing party in this action since the parties have reached a good faith settlement.

13.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendants, and each of them, (i) agree to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoint Defendants' undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waive the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendants' travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consent to personal jurisdiction over Defendants, and each of them, in any United States District Court for purposes of enforcing any such subpoena.

14.     Defendants, and each of them, agree that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.    Defendants, and each of them, agree that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Langley Partners, L.P.
North Olmsted Partners, L.P.
Quantico Partners, L.P.

By: _____

Jeffrey Thorp

On March _1_, 2006, ____JEFFREY THORP____, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of _DEFENDANTS_ as its _AUTHORIZED AGENT_

_____
Notary Public
Commission expires:          CAROL DERBY
                             Notary Public, State Of New York
                             No. 01DE5693325
                             Qualified in New York County
                             Commission Expires March 30, 2008

Approved as to form:

_____
Andrew G. Gordon, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3543

Attorney for Defendants

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

LANGLEY PARTNERS, L.P., NORTH OLMSTED
PARTNERS, L.P., QUANTICO PARTNERS, L.P.,
AND JEFFREY THORP,

Defendants.

C.A. No. __-____ (__)

## CONSENT OF DEFENDANT JEFFREY THORP

1.    Defendant Jeffrey Thorp ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendant from violation of Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; and

(b)    orders Defendant to pay a civil penalty in the amount of $2,300,000 under Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

1

3.     Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of third parties.  Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of third parties.

4.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

2

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty (30) days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.    In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile

4

transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: _MARCH 1, 2006_                    _____
                                          Jeffrey Thorp

On March _1_, 2006, _JEFFREY THORP_, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

                                          _____
                                          Notary Public
                                          Commission expires: _____

                                          CAROL DERBY
                                          Notary Public, State Of New York
                                          No. 01DE5993325
                                          Qualified In New York County
                                          Commission Expires March 30, 2006

Approved as to form:

_____
Andrew G. Gordon, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3543

Attorney for Defendant

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

C.A. No. __-____ (___)

v.

LANGLEY PARTNERS, L.P., NORTH OLMSTED
PARTNERS, L.P., QUANTICO PARTNERS, L.P.,
AND JEFFREY THORP,

Defendants.

## FINAL JUDGMENT AS TO DEFENDANTS LANGLEY PARTNERS, L.P., NORTH OLMSTED PARTNERS, L.P., AND QUANTICO PARTNERS, L.P.

The Securities and Exchange Commission having filed a Complaint and Langley Partners,

L.P., North Olmsted Partners, L.P., and Quantico Partners, L.P. ("Defendants"), and each of them,

having entered a general appearance; consented to the Court's jurisdiction over Defendants, and each

of them, and the subject matter of this action; consented to entry of this Final Judgment without

admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of

fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants, and each of

them, and Defendants' agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)      to employ any device, scheme, or artifice to defraud;

    (b)      to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)      to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants, and each of them, and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)      to employ any device, scheme, or artifice to defraud;

    (b)      to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

2

(c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants, and each of them, and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

(a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8

3

of the Securities Act [15 U.S.C. § 77h].

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are jointly and severally liable for disgorgement of $7,048,528, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,769,400, for a total of $8,817,928. Defendants shall satisfy this obligation by paying $8,817,928 within ten (10) business days to the Clerk of this Court, together with a cover letter identifying Langley Partners, L.P., North Olmsted Partners, L.P., and Quantico Partners, L.P. as defendants in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendants shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. By making this payment, Defendants, and each of them, relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendants. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS") or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may propose a

4

plan to distribute the Fund subject to the Court's approval. Defendants shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants jointly and severally shall pay a civil penalty in the amount of $4,700,000 pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. Defendants shall make this payment within ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Langley Partners, L.P., North Olmsted Partners, L.P., and Quantico Partners, L.P. as defendants in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendants shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants, and each of them, shall comply with all of the undertakings and agreements set forth therein.

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: _____, 2006

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

LANGLEY PARTNERS, L.P., NORTH OLMSTED
PARTNERS, L.P., QUANTICO PARTNERS, L.P.,
AND JEFFREY THORP,

Defendants.

C.A. No. __-____ (___)

**FINAL JUDGMENT AS TO DEFENDANT JEFFREY THORP**

The Securities and Exchange Commission having filed a Complaint and Jeffrey Thorp ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate

commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

(a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a civil penalty in the amount of $2,300,000 pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.  Defendant shall make this payment within ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission.  The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Jeffrey Thorp as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment.  Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

4

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: _____, 2006

_____
UNITED STATES DISTRICT JUDGE

5